IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN MOTORISTS INSURANCE COMPANY, an Illinois corporation, as successor-in-interest to Specialty National Insurance Company, an Illinois corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>AMERICAN RE-INSURANCE COMPANY, a Delaware corporation,<br><br>    Defendant.<br>_____/ | No. C 05-5202 CW<br><br>ORDER DENYING DEFENDANT'S FURTHER MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S FURTHER CROSS-MOTION FOR SUMMARY JUDGMENT |

Pursuant to the Court's November 7, 2007 order, Defendant American Re-Insurance Company (American Re) has filed a further motion for summary judgment. Plaintiff opposes the motion and cross-moves for summary judgment. Defendant opposes Plaintiff's cross-motion. The motions were submitted on the papers. Having considered all of the papers filed by the parties, the Court denies both motions.

BACKGROUND

As discussed in the Court's order on the parties' initial cross-motions for summary judgment, this dispute arises out of a certificate of facultative reinsurance[1] (the American Re agreement) issued by Defendant American Re to Specialty National Insurance (SNIC), the predecessor in interest to Plaintiff AMICO. The American Re agreement was issued to provide 100% reinsurance for a certificate of insurance issued by SNIC (the SNIC certificate) to the Montana Municipal Insurance Authority (MMIA), a municipal insurance pool that provides insurance to its member entities, including the city of Great Falls, Montana.[2]

The underlying MMIA policy provides cities with coverage for their statutory liability of $750,000 for each claim and $1.5 million for each occurrence for tort actions against then, and up to $10 million for claims that do not fall within the Montana state tort cap, but otherwise fall within the scope of coverage under the policy. The Montana state tort cap, Montana Code § 2-9-108 provides, "The state, a county, municipality, taxing district, or any other political subdivision of the state is not liable in tort action for damages suffered as a result of an act or omission of an officer, agent, or employee of that entity in excess of $750,000

---

[1] "There are two basic types of reinsurance policies--facultative and treaty. . . . In facultative reinsurance, a ceding insurer purchases reinsurance for a part, or all, of a single insurance policy. Treaty reinsurance covers specified classes of a ceding insurer's policies." Unigard Sec. Ins. Co., Inc. v. North River Ins. Co., 4 F.3d 1049, 1053-54 (2d Cir. 1993).

[2] MMIA obtained its policy with SNIC through the National Public Entities Excess Program (NPX), a liability reinsurance risk purchasing group.

2

for each claim and $1.5 million for each occurrence."  Mont. Code Ann. § 2-9-103(1).  Further, the code states, "An insurer is not liable for excess damages unless the insurer specifically agrees by written endorsement to provide coverage to the governmental agency involved in amounts in excess of a limitation stated in this section, in which case the insurer may not claim the benefits of the limitation specifically waived."  Id. at § 2-9-108(3).

Defendant states that the SNIC policy provides reinsurance for MMIA's $10 million "non-tort cap related" exposure in excess of MMIA's $750,000 per person and $1.5 million per occurrence retention for claims falling within Montana's statutory cap.  As discussed below, Defendant's position is that the SNIC policy was a reinsurance policy, not an excess liability coverage; thus, the policy did not operate to waive the statutory tort cap pursuant to Montana Code § 2-9-108.  Plaintiff concedes that the insurance policy it issued to MMIA was on a reinsurance form but claims that it was an excess policy.

On March 10, 2001, while all of the agreements mentioned above were in effect, Jeremy Parsons suffered a severe brain injury at the Cascade County Fairgrounds in Great Falls, Montana, when a steel beam fell off of a concrete pillar, crushing his head and face.  Parsons filed a claim with MMIA in April, 2001, alleging that the beam was maintained by the City of Great Falls.  On August 13, 2001, MMIA provided its "first report of potential excess claim" to SNIC.

On July 23, 2002, Parsons filed a complaint for declaratory relief in Montana state court, seeking damages in excess of the

3

Montana statutory cap and challenging the constitutionality of the cap.  On August 13, 2002, Parsons' attorney informed SNIC that, because it had repeatedly failed to respond to Parsons' requests seeking confirmation that SNIC provided excess liability coverage to the City of Great Falls, he would amend the complaint joining SNIC as a defendant.  The amended complaint also sought a declaration of the nature and extent of coverage under the SNIC policy.  At that point, MMIA had paid Parsons $750,000, exhausting its $750,000 policy limit for claims falling within the tort cap.

After receiving the amended complaint, SNIC sought a coverage opinion from Curtis Drake, the attorney representing the City of Great Falls, asking whether the statutory cap on damages applied to the SNIC certificate.  On September 10, 2001, Drake stated that the cap likely would not apply to SNIC because its policy "specifically provides coverage for damages in excess of" the statutory limitations.  Craig Decl. Filed in Support of Initial Motion for Summary Judgment, Ex. M.  However, Drake noted that he had not received or reviewed any of the correspondence between the parties or the SNIC certificate before offering his opinion.  On October 21, 2001, Drake filed an answer on behalf of SNIC, admitting that the SNIC policy provided coverage of up to $10 million in excess of the coverage provided by MMIA.

In June, 2002, SNIC prepared a Major Loss Report (MLR) for the Parsons claim.  In December, 2002, SNIC prepared a second MLR.  On May 15, 2003, Am Re notified SNIC that it believed that Drake had a conflict of interest in representing both the City of Great Falls and SNIC, and that SNIC should retain coverage counsel.  Therefore,

4

SNIC retained Susan Roy to answer the Second Amended Complaint filed May 1, 2003. Roy was instructed by SNIC and American Re that the SNIC certificate "is a reinsurance policy to MMIA and not an excess policy for claims against members in the MMIA pool." Id. However, Roy expressed concerns about SNIC changing its position with respect to its policy. She stated,

> It's our opinion that no amount of tweaking or word smithing will mitigate the inconsistency which will be apparent. [SNIC] made a judicial admission that it is excess insurance and is now changing that admission. . . Since excess insurance and reinsurance are completely different, Specialty National cannot argue in good faith that its reference to excess insurance actually meant reinsurance.

Id. at 2-3. Further, Roy stated, "It is not as if we are considering the policy without a context . . . At no time has anyone asserted that this policy is reinsurance to reimburse MMIA for any amounts it might pay above the self-insured retention, which it would not because its limits match the self-insured retention. Rather, the file is replete with references to excess insurance." Id. at 3-4. Therefore, Roy recommended that SNIC not change its position and stated that it likely would face bad faith exposure if it did so.

On August 26, 2003, Am Re notified SNIC that it reserved its rights to disclaim any liability that SNIC incurred due to its decision to "handle the claim as if it provided direct excess liability coverage." Craig Decl. filed in Support of Initial Motion for Summary Judgment, Ex. T. Am Re also asserted that it "received first notice of this matter on March 30, 2003." Id. Am Re asserts that SNIC decided to stop communicating with it

5

regarding the litigation.  SNIC asserts that it explained to Am Re that this decision was based on concerns that communications between the two would not be protected by the attorney-client privilege.

SNIC then sought another opinion regarding its liability for the Parsons claim.  On October 1, 2003, Michael Milodragovich provided a written report including seven separate opinions.  In one of those opinions, Milodragovich found that the answer filed by Drake did not constitute a judicial admission that the SNIC certificate provided excess liability coverage.  He also noted, among other things, that "the premiums paid for the reinsurance coverage are incongruous with the risk actually assumed by the reinsurer if the SNIC and AMPICO policies are interpreted solely as reinsurance for a portion of the risk on the MMIA policy." Milodragovich Decl., Ex. A at 27.  Therefore, Milodragovich opined "that a Montana court would find that the coverage was, in fact, excess coverage."  Id. at 28.  Milodragovich also opined that a Montana court likely would find ambiguities in the SNIC certificate sufficient to justify the admission of extrinsic evidence.  Further, Milodragovich stated that the extrinsic evidence in the record "serve[s] to affirm the status of the reinsurance agreements as policies of excess liability coverage for the City of Great Falls."  Id. at 35.

Moreover, Milodragovich opined that the court and judge assigned to the case were both likely to favor the Parsons and that the "Montana Supreme Court has, for at least the last 20 years, been an activist court.  In that effort, it has been distinctly

6

pro-consumer in issues akin to those presented if any aspect of the Parsons claim were appealed." Id. at 40-41.  In conclusion, Milodragovich stated,

> 1) There is sufficient ambiguity in the contracts to permit the consideration of extrinsic evidence by the court and to resulting [sic] in construction of the policies in favor of the insured in his case; 2) It is apparent from the materials we considered that MMIA purchased the coverage as "excess liability coverage" for the benefit of its pool members.

Id. at 41.

The next day, on October 4, 2003, SNIC prepared a further MLR, taking into account all three of the opinions it received. The MLR ended with a plan of action, and a conclusion that "settlement of the case is recommended at 4.5 million dollars." Malany Decl., Ex. A. In December, 2003, SNIC settled with Parsons for $4.5 million. Am Re denied SNIC's claim for indemnification.

Plaintiff initially filed this case on December 15, 2005, after attempts to resolve the dispute without litigation. Plaintiff alleges that "American Re is obligated to indemnify Plaintiff for the Parsons Loss under the AmRe Agreement, 'follow the fortunes' doctrine, and duty of good faith and fair dealing." SAC ¶ 35. Therefore, Plaintiff seeks relief on three causes of action: (1) declaratory relief regarding the respective rights and obligations of the parties under the American Re agreement; (2) breach of contract; and (3) breach of the covenant of good faith and fair dealing.

On May 29, 2007, the Court granted in part Defendant's initial motion for summary judgment and denied Plaintiff's initial cross-motion for summary judgment. The Court found that the Am Re

7

agreement does not contain a "follow the settlements" provision. Defendant now argues that the contracts at issue unambiguously provide that it is only obliged to pay claims that fall within the scope of the SNIC certificate and it is entitled to summary judgment because Plaintiff cannot establish that the Parsons claim was covered by the SNIC certificate.  Further, Defendant notes that if it was not required to indemnify Plaintiff for the Parsons claim, it did not breach its contract nor breach the covenant of good faith and fair dealing.  Plaintiff counters that it is entitled to summary judgment because Defendant has failed to introduce any evidence to demonstrate that the SNIC certificate did not provide coverage for the Parsons claim.

## LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law.  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute.  Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material.  Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289.  The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

8

587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods. Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1106 (9th Cir. 2000).

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

Id.

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim. Id.; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990); Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991). If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to produce "specific evidence, through affidavits or admissible

9

1  discovery material, to show that the dispute exists." Bhan, 929
2  F.2d at 1409.

## DISCUSSION

Defendant correctly argues that because the Court has already found that Defendant is not required to "follow the settlements", Plaintiff bears the burden of establishing that the Parsons claim was covered by its obligations under the SNIC certificate. Nat'l Am. Ins. Co. of Cal. v. Certain Underwriters at Lloyd's London, 93 F.3d 529, 536 (9th Cir. 1996). Defendant further argues that the question of whether Plaintiff was liable for the Parsons claim should be resolved solely as a question of law by reference to the contracts at issue and that there are

> only two ways that [Plaintiff] could have been found 'legally obligated to pay' the underlying claim: (a) the Montana Court could have found that the statutory tort cap was unconstitutional; or (b) the Montana court could have found that the statutory tort cap had been waived.

Defendant's Reply at 5.

However, the American Re agreement unambiguously provides Plaintiff with the right to settle claims in some instances. See Craig Decl., Ex. C at ¶¶ 2, 4 (Plaintiff required to "settle all claims under its policy in accordance with the terms and conditions thereof" as well as its "obligation to investigate and defend claims or suits affecting this reinsurance and to pursue such claims or suits to final determination.")  Defendant's argument cannot stand in light of these terms. "Final determination" is not defined as litigating a case to judgment. Further, in this case, the question of whether Plaintiff was liable under the SNIC certificate for the Parsons claim necessarily involves resolution

10

of questions of fact and weighing of conflicting evidence.

Plaintiff argues that the above cited provisions in the American Re agreement "clearly and unambiguously provided AMICO with the right to settle claims when AMICO made a final determination that the claims or suits were covered by the AMICO policies reinsured by American Re."[3] Plaintiff's Opposition and Cross-Motion at 2. In attempting to establish that the claims are covered, Plaintiff merely argues that "on October 5, 2003, SNIC made a determination based on its investigation of the Parsons claim that a Montana court would rule that the SNIC certificate provided coverage for the Parsons lawsuit."[4] Opposition and Cross-Motion at 8. In making this argument, Plaintiff essentially repeats its "follow-the-fortunes" theory, arguing that it is entitled to settle cases under the contract, there is no evidence that it settled the Parsons claim in bad faith and, therefore, Defendant is obliged to reimburse it for the settlement. This is not enough.

Nonetheless, the Court notes that the exhibits filed in support of Plaintiff's motion, including the three lawyers' opinions and the MLRs prepared by SNIC, demonstrate that a triable

---

[3] Much of Plaintiff's argument is focused on its right to settle claims. However, even if it is entitled to settle claims, it remains that Defendant agrees to indemnify Plaintiff only "against losses or damages which [Plaintiff] is legally obligated to pay." Craig Decl., Ex. C.

[4] Plaintiff also argues that, even absent an obligation to "follow the settlements," it need only demonstrate that it was at least potentially liable on the underlying claim. Plaintiff's Opposition and Cross-Motion at 4. However, as noted above, in order to prevail at trial, Plaintiff must establish that it actually was liable.

11

question of fact exists regarding whether the Parsons claim was covered by the SNIC certificate.  Therefore, the Court denies Defendant's motion for summary judgment.  At the same time, Plaintiff's cross-motion for summary judgment is based on the mistaken argument that Defendant bears the burden of establishing that "a Montana Court would rule that the Parsons Claims would not be covered."  Opposition and Cross-Motion at 15.  As discussed above, Plaintiff bears the burden of establishing that it was liable for the Parsons claim based on the SNIC certificate. Therefore, the Court denies Plaintiff's cross-motion.

## CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's motion for summary judgment (Docket No. 142) and DENIES Plaintiff's cross-motion for summary judgment (Docket No. 148).[5]  The case will proceed to jury trial as scheduled on Monday, November 26, 2007.

IT IS SO ORDERED.

Dated: 11/21/07

CLAUDIA WILKEN
United States District Judge

---

[5] Plaintiff's motions to strike evidence and argument are DENIED as moot (Docket Nos. 161, 162).  The Court did not rely on any improper or inadmissible evidence in deciding the parties' motions for summary judgment.